**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-125ML |
| | ) | |
| IRWIN KALMER | ) | |

**GOVERNMENT'S OBJECTION TO DEFENDANT**
**IRWIN KALMER'S MOTION FOR DOWNWARD DEPARTURE**
**AND/OR MOTION FOR SENTENCE VARIANCE PURSUANT TO**
***UNITED STATES v. BOOKER*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a)**

The United States of America, by and through its undersigned attorneys, respectfully submits this Objection to defendant's Motion for Downward Departure and/or Motion for Sentence Variance Pursuant to United States v. Booker, 543 U.S. 220 (2205) and 18 U.S.C. § 3553 (a). In support of its Objection, the government submits the attached Memorandum of Law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Andrew J. Reich

ANDREW J. REICH
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000 -- (401) 709-5001 (fax)
email: andrew.reich@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of May, 2007 I caused the within Government's Objection to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF system and served by electronic notification upon:

James P. Redding, Esq.
Greenberg Traurig, LLP
One International Place
Boston, MA 02110
Reddingj@gtlaw.com.

/s/ Andrew J. Reich

ANDREW J. REICH
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000 -- (401) 709-5001 (fax)
email: andrew.reich@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 06-125ML |
| | ) | |
| IRWIN KALMER | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT IRWIN KALMER'S MOTION FOR DOWNWARD DEPARTURE AND/OR MOTION FOR SENTENCE VARIANCE PURSUANT TO *UNITED STATES v. BOOKER*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a)**

Defendant Irwin Kalmer (Defendant or Kalmer) has moved this Court to depart downward from the Sentencing Guidelines (the Guidelines or U.S.S.G.) range set forth in the presentence report (PSR), or in the alternative, for a sentence variance pursuant to United States v. Booker, 543 U.S. 220 (2005), and 18 U.S.C. § 3553(a). As grounds, Kalmer argues that a departure and/or variance is warranted on the grounds of extraordinary family circumstances.

In light of United States v. Booker, 543 U.S. 220 (2005), the Guidelines are no longer mandatory in terms of their application by District Courts. However, Booker dictates that District Courts must consult the Guidelines and must take them into account when sentencing. Compliance with Booker necessitates that Guidelines calculations be prepared by the U. S. Probation Officer. It also necessitates that the Court perform an analysis, in the appropriate case, as to whether a downward, or upward, departure is warranted. As was the case previous to the Booker decision, District Courts must also consider those factors set forth in 18 U.S.C. § 3553(a), including: the applicable Guidelines range; the nature, seriousness and circumstances of

the offense; the history and characteristics of the defendant; protection of the public; deterrence to criminal conduct; the need to promote respect for law and provide for just punishment; the needs of the defendant for educational training, vocational training, medical care and other correctional treatment; the need to avoid unwarranted disparities among similarly situated defendants; and restitution concerns.

In terms of a Guidelines analysis, pre-Booker case law still applies. Whether the Guidelines are mandatory or advisory, such case law interprets and explains the Guidelines. Each guideline applies to a heartland of typical cases. United States v. Carrion-Cruz, 92 F.3d 5, 6 (1st Cir. 1996). A District Court has discretion to depart from the guideline range if the Court finds that "there exists an aggravating or mitigating circumstance of a kind, to a degree, not adequately taken into consideration" by the Sentencing Commission in formulating the Guidelines. 18 U.S.C. § 3553(b). However, not every mitigating or aggravating circumstance warrants a departure. United States v. Bogdan, 284 F.3d 324, 327 (1st Cir. 2002); United States v. Vasquez, 279 F.3d 77, 80 (1st Cir. 2002).

The Guidelines list several factors which are forbidden and cannot be used as grounds upon which to base a Guidelines departure. Other factors are described as "encouraged" or "discouraged." If an encouraged factor is present, the Court may base a Guidelines departure decision on that factor if the applicable guideline has not already taken it into consideration. If a discouraged factor is present, or the encouraged factor has already been taken into account by the guideline, the Court may depart under the Guidelines only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If the particular factor is not mentioned in the Guidelines, the Court must

decide whether the factor is sufficient to take the case out of the heartland. A departure based on an unmentioned factor will be "highly infrequent." Koon v. United States, 518 U.S. 81, 96 (1996); United States v. Dethlefs, 123 F.3d 39 (1st Cir. 1997).

Section 5H1.6 of the Guidelines states, in part, that "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Thus family ties and responsibilities are discouraged factors upon which to base a departure decision under the Guidelines. To base a departure on this factor, the family ties or responsibilities must be present to an exceptional degree, distinguishing it from the ordinary case. United States v. Louis, 300 F.3d 78, 81-82 (1st Cir. 2002). As noted by the Louis Court:

> A defendant's incarceration will invariably cause hardship to his family. We cannot 'presume, as a general matter, that the Commission either overlooked or inadequately considered' such a consequence in formulating the guidelines. Id. (quoting United States v. Clase-Espinal, 115 F.3d 1054, 1057 (1st Cir. 1997)).

In Louis the defendant submitted a report to the sentencing court from a psychologist which stated that the defendant's son was very attached to the defendant, and that incarceration "would run the risk of significant deterioration of the child's emotional and psychological functioning...." Louis, 300 F.3d at 80. In upholding the sentencing court's refusal to depart downward, the Court noted:

> The issue is not the importance and value of the particular support that [the defendant] gives to his son. That support is unquestionably important and valuable to [his son]. The question, rather, is whether that support is so different in kind or degree from the many kinds of support that can be important in the parent/child relationship that it makes the family ties and responsibilities factor in this case exceptional. We think not. Indeed, the hardship visited upon [the defendant's] family by his incarceration does not match

> the hardship endured by other families in cases where we refused to authorize a departure.

Louis, 300 F.3d at 82. Likewise, in United States v. Bogdan, supra, at 327, the Court said "[r]egrettably, the 'heartland' of cases under the Guidelines encompasses immense and heart-wrenching hardships." 284 F.3d at 330.

The factors identified by Kalmer are that he is the father of two four year old adopted sons from Russia who would be at risk if he were incarcerated, and that he is the "sole family caretaker" for his 98 year old mother who lives in a residential care facility in Connecticut. (Defendant's Memorandum, p. 8) Downward departures from the Guidelines based on these grounds have been rejected by Courts where the circumstances were similar or worse than those set forth by Kalmer. See, United States v. Chestna, 962 F.2d 103 (1st Cir.), cert. denied, 506 U.S. 920 (1992) (defendant's status as a single mother of four young children not an unusual family circumstance); United States v. Reyes-Rodriguez, 344 F.3d 1071 (10th Cir. 2003) (defendant's support of his wife, two children, and his poverty-stricken parents did not bring case outside the heartland); United States v. Carrasco, 271 F.3d 765 (8th Cir. 2001) (defendant, whose wife was disabled and was the primary support for three children, was not entitled to a family circumstances downward departure); United States v. Sweeting, 213 F.3d 95 (3rd Cir.), cert. denied, 531 U.S. 906 (2000) (defendant's status as the sole support for five children, including one who suffered from Tourette's Syndrome, was insufficient to take the case out of the heartland); United States v. Kapitzke, 130 F.3d 820 (8th Cir. 1997) (fact that defendant's incarceration would place financial burden on wife, who would be left to support their two children alone, not justify departure); United States v. Archuleta, 128 F.3d 1446 (10th Cir. 1997) (defendant's status as single parent for two minor children and care giver for a diabetic mother

did not take case outside the heartland); United States v. Cacho, 951 F.2d 308 (11th Cir. 1992) (mother of four small children not entitled to family circumstances downward departure); United States v. Goff, 907 F.2d 1441 (4th Cir. 1990) (nothing extraordinary where defendant was mother of three children, ages two through seven, who would have to live with defendant's ill mother in Ohio during defendant's imprisonment).

In the instant case, Kalmer has failed to demonstrate extraordinary family circumstances which take him outside the heartland. The defendant relies on a letter from Dr. Pamela Shuman, dated February 25, 2007, which sets forth her opinion as to the possible effects incarceration would have on Kalmer's sons. A number of significant things are to be noted about Dr. Shuman's letter. First, her involvement with Kalmer's sons did not begin until after Kalmer knew that he was facing criminal prosecution. Kalmer was aware of the criminal tax investigation since at least June, 2006. On October 30, 2006, he signed the plea agreement in this case. It was during that same month that Dr. Shuman conducted her home visit with the defendant and his family. In fact, Dr. Shuman's conclusions about the defendant's sons are based on this single home visit, in addition to telephone calls she had with the defendant and his wife. Dr. Shuman had not been treating the defendant's children prior to this time. In fact, her statements about the children's early childhood are based on statements made to her by the defendant and his wife. (Dr. Shuman's letter, p. 2)

Dr. Shuman's diagnostic conclusions also appear to be based, in large measure, on generalizations, rather than specific observations of the defendant's children. For example, she notes that "children adopted from Russian orphanages have an elevated risk of attachment disorders and post traumatic stress disorder due to lack of a consistent and nurturing primary

care giver." While these observations are of some relevance, they do not necessarily apply specifically to the children in this case.

It should also be noted that Dr. Shuman concludes that "the boys are flourishing, with only mild developmental issues that the family continues to address." (Dr. Shuman's letter, p. 4) Her statements regarding the negative consequences of the defendant's incarceration are speculative. She states that "if Irwin were removed from his sons' lives for any significant period of time at this important phase of their development, both boys would be *at risk* for significant decompensation and reactivation of the posttraumatic symptoms related to early neglect." (emphasis added) (Dr. Shuman's letter, p. 5)

In his Memorandum, the defendant relies primarily on the First Circuit's decision in United States v. Sclamo, 997 F.2d 970 (1st Cir. 1993). The defendant asserts that Sclamo is "very similar" to the case at bar, and that the First Circuit "upheld the district court's reduction of criminal history to a category I and seven level downward departure to three years probation and six months home detention where the twelve year old son of the woman defendant had been living with for three years suffered from" various psychological disorders. (Defendant's Memorandum, p. 12) First, it should be noted that the reduction in the criminal history category in Sclamo had nothing to do with the child, but rather, was based on the fact that the criminal history category over represented the severity of the defendant's criminal history. More significantly, however, is that in Sclamo the sentencing court received letters from a psychologist who had treated the defendant and the child on a regular basis over a period of several years. This was a significant factor in the Court's decision to uphold the downward departure. The Court stated:

> As an initial matter, we cannot fault the district court's conclusion that the psychological treatment and observations of James were not contrived or fabricated to assist Sclamo. James's referral for individual psychotherapy, made by a case worker with no connection to defendant, predated the circumstances giving rise to this case. Moreover, the psychologist's reports are based on a long history of personal observation, interaction, and treatment not only of James but of defendant as well. The district court, therefore, was entitled to credit the psychologist's professional judgment of the critical and unique role played by defendant in James's treatment.

Sclamo, 997 F.2d at 973-74. In the case at bar, Dr. Shuman's contacts with the defendant and his children were both of recent origin and of limited duration. Moreover, there are no reports from any other doctors reflecting past psychological problems experienced by the children. In Sclamo the Court also noted that the child was already suffering from a clinical disorder. Sclamo, 997 F.2d at 974.

Defendant also relies on United States v. Roselli, 366 F.3d 58 (1st Cir. 2004), where the Court upheld a downward departure based on family circumstances in a tax fraud case. However, the family circumstances in Roselli were far different from the circumstances in the case at bar. In Roselli the defendant had four children, two of whom suffered from cystic fibrosis (ages 1 and 9). Care for the children required extensive effort by both parents. One child had to visit a pulmonary doctor at least six times per year, and was hospitalized three times over a four year period. This child also required intravenous antibiotics three times a day, with each session lasting one hour. The child required a special diet, in addition to a 30 minute treatment to combat bacteria in the lungs. The other child required even more care, since in addition to cystic fibrosis, this child also suffered form gastroesophageal reflux disease. This required both parents to feed the child through a feeding tube, three times a day, with each session lasting 45 minutes. In

addition, the child had food and medication administered to him each night for 8 to 10 hours through a feeding tube, and the parents had to check the tube throughout the night to make sure the child was not chocking. Furthermore, the defendant's wife suffered from fibromyalia, a chronic condition that causes pain in the soft tissue and joints throughout her body, in addition to chronic migraine headaches, depression and anxiety.

Likewise, in United States v. Spero, 382 F.3d 803 (8th Cir. 2004), where the Court upheld a downward departure based on family circumstances, the defendant had four children. One of his children suffered from a variety of development disorders, including Pervasive Developmental Disorder, mild retardation, Attention Deficit Hyperactive Disorder, and macrocephaly. Information regarding these conditions was submitted to the sentencing court by this child's physician.

In addition, the fact that the defendant will not be able to visit his mother who lives in a residential care facility does not warrant a downward departure. In United States v. Pereira, 272 F.3d 76 (1st Cir. 2001), the Court upheld the district court's denial of a downward departure under more aggravating circumstances. In that case, the defendant spent approximately 20 hours per weeks caring for his elderly parents needs. The Court noted that "disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." Pereira, 272 F.3d at 81.

This is not an extraordinary case. The motion for downward departure under the Guidelines should be denied.

The government also believes that after taking into consideration all of the factors set forth in 18 U.S.C. § 3553(a), the appropriate sentence in this case is one which falls within the

Guideline range of 12 to 18 months. Here, the government is recommending that the defendant be sentenced at the lower end of the range.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Andrew J. Reich

ANDREW J. REICH
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000 -- (401) 709-5001 (fax)
email: andrew.reich@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of May, 2007 I caused the within Government's Memorandum to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF system and served by electronic notification upon:

James P. Redding, Esq.
Greenberg Traurig, LLP
One International Place
Boston, MA 02110.
Reddingj@gtlaw.com.

/s/ Andrew J. Reich

ANDREW J. REICH
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000 -- (401) 709-5001 (fax)
email: andrew.reich@usdoj.gov